UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN TROY STURGES, | 1:05-CV-00017 GSA HC |
| Petitioner, | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | ORDER DIRECTING CLERK OF COURT TO ENTER JUDGMENT FOR RESPONDENT |
| MATTHEW C. KRAMER, et al., | |
| Respondents. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The parties having voluntarily consented to exercise of Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c)(1), by order dated November 29, 2005, this case was assigned to the Magistrate Judge for all purposes, including entry of final judgment.

**BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Stanislaus, following his conviction by jury trial on May 13, 2003, of second degree burglary in violation of Cal. Penal Code § 460(b). See Lodged Document No. 2. The trial court found the prior conviction allegations true and sentenced Petitioner to serve a total determinate prison term of five years. Id.

Petitioner thereafter appealed the conviction. On August 5, 2004, the California Court of Appeal, Fifth Appellate District (hereinafter "Fifth DCA"), affirmed the conviction. Id.

On September 13, 2004, Petitioner filed a petition for review with the California Supreme

1  Court.  See Lodged Document No. 3.  Review was summarily denied by the California Supreme
2  Court on October 13, 2004.  See Lodged Document No. 4.
3      On December 14, 2004, Petitioner filed the instant petition for writ of habeas corpus in the
4  Sacramento Division of the United States District Court for the Eastern District of California. On
5  January 5, 2005, the petition was transferred to the Fresno Division and received in this Court. In his
6  petition, Petitioner raises the following five grounds for relief: (1) "Denial of effective assistance of
7  counsel by the failure of counsel to to [sic] object to the hearsay statement of one Brandon Womack,
8  depriving Petitioner of his Sixth Amendment right to confront and cross examine adversarial
9  witnesses"; (2) "As incorporated above, when Brandon Womack pled the Fifth, and yet his hearsay
10 statement was ruled admissible into the court against Petitioner, Petitioner was deprived of his Sixth
11 Amendment right to confront and cross examine"; (3) "Petitioner was deprived of the right to a sua
12 sponte instruction on a lesser included offense"; (4) "Insufficient evidence to support the
13 judgement"; and (5) "The jury was improperly instructed concerning aiding and abetting when there
14 was no principal charged with the alleged crime."
15      On October 11, 2005, Respondent filed a motion to dismiss the petition as a mixed petition
16 containing exhausted and unexhausted claims. Specifically, Respondent argued that Grounds Two
17 through Five were unexhausted. Petitioner did not oppose Respondent's motion to dismiss. On
18 December 2, 2005, Magistrate Judge Lawrence J. O'Neill granted the motion and granted Petitioner
19 leave to withdraw the four unexhausted claims in lieu of suffering dismissal. Petitioner so moved on
20 January 12, 2006, and the Court granted the motion on January 26, 2006.
21      On April 18, 2006, Respondent filed an answer to the petition. Petitioner did not file a
22 traverse.

**FACTUAL BACKGROUND**[1]

24 Michael Gates testified that on February 9, 2003, at approximately 3:55 a.m., he and Joey
25 Kaiser arrived in Gates' truck at Kaiser's duplex in Modesto from a fishing trip. The duplex was
26 located on a cul-de-sac. Before going inside, Gates activated his alarm, which automatically locked

---

[1] The facts are derived from the factual summary set forth by the Fifth DCA in its opinion of August 5, 2004, and are presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1). See Lodged Doc. No. 2.

the doors. Gates left fishing poles, a tackle box, a citizen's band radio, and the removable cover to his truck's stereo in the cab of the truck.

At approximately 4:05 a.m., the alarm in Gates' truck went off and he and Kaiser went to investigate. Gates saw that the wing window of the truck had been pushed open, the driver's door window was rolled almost completely down, and the driver's door was wide open. Gates also saw two men, later identified as Petitioner and Brandon Womack, approximately 50 feet from the truck running away.

As Kaiser ran after the men, Gates got into his truck and followed them. At one point, the two men hid behind some bushes but ran off before Gates and Kaiser could restrain them. Eventually, Petitioner ran into his father's house located approximately three and a half blocks away from Kaiser's house while Womack was detained on the street by Kaiser and Gates.[2]

Kaiser testified that when Petitioner and Womack came out from behind the bushes, Petitioner swung a large flashlight at Kaiser before running away.

Modesto Police Officer Brian Kleiber testified that on February 9, 2003, at approximately 5:30 a.m., he and his partner responded to a disturbance call. When he arrived on the scene, Gates, Kaiser, and Womack were standing in the street. After Petitioner came out of his father's house, Kleiber's partner placed him in handcuffs. During a postarrest interview Petitioner stated that he was walking by Gates' truck, that he stopped to urinate because he had been drinking, and that the truck's alarm went off when he brushed against the truck.

During cross-examination, defense counsel elicited from Kleiber that Womack told him that he and Petitioner were leaving a convenience store when the truck's alarm went off and that Womack's and Petitioner's stories differed with respect to who left the store first. However, Kleiber did not check with the convenience store to see if they had a videotape showing Petitioner and Womack in the store that morning, which could have helped him determine whether either one of them was telling the truth.

On redirect examination, the prosecutor asked Kleiber how Petitioner's and Womack's

---

[2] Gates' testimony established that Petitioner and Womack ran out of the cul-de-sac where Kaiser lived, then right for three blocks and then left onto a dead end street where Petitioner's father lived.

1  stories varied and he testified that they varied with respect to who left the convenience store first.
2  When the prosecutor asked Kleiber what Womack said, Kleiber testified as follows, without
3  objection:

> He said [Petitioner] left shortly before he did and when he caught up to . . . [Petitioner], [Petitioner] . . . was at the truck with the alarm going off and began running from it, so he began running as well, and while they were running, he asked [Petitioner] why they were running and [Petitioner] told him because he was trying to steal something.

7  On recross-examination, defense counsel elicited from Kleiber that he did not know how
8  reliable Womack was and that he had no way of knowing whether Womack told him the truth.
9  Petitioner's father testified that he was in his house getting ready to go to work when he
10 heard noise outside. He then looked outside, saw his son, and told him to get inside. Petitioner's
11 father subsequently went outside and asked Womack who had broken into the truck and Womack
12 apologized and said he had.
13 On February 11, 2003, Womack called Petitioner's father and again apologized. He also
14 stated that he was going to turn himself in and say he opened the door and did everything so he could
15 get Petitioner released.
16 Kleiber testified in rebuttal that Petitioner's father never told him about Womack's alleged
17 February 9, 2003, statement to him.

## DISCUSSION

**I.  Jurisdiction**

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); <u>Williams v. Taylor</u>, 529 U.S. 362, 375 fn.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution.  In addition, the conviction challenged arises out of the Stanislaus County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 2241(d). Accordingly, the Court has jurisdiction over the action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.

1  Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114
2  F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert.*
3  *denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997)
4  (holding AEDPA only applicable to cases filed after statute's enactment).  The instant petition was
5  filed after the enactment of the AEDPA; thus, it is governed by its provisions.

**II.  Legal Standard of Review**

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996.  Lockyer v. Andrade,  538 U.S. 63, 70 (2003).  Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a

question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." <u>Williams</u>, 529 U.S. at 413; <u>see also</u> <u>Lockyer</u>, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Williams</u>, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." <u>Id</u>. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." <u>Id</u>. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. <u>Baylor v. Estelle</u>, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See <u>Duhaime v. Ducharme</u>, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct, 28 U.S.C. § 2254(e)(1), and we are bound by a state's interpretation of its own laws. <u>Souch v. Schaivo</u>, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

**III.  Review of Petition**

In his sole ground for relief, Petitioner argues he was denied effective assistance of trial counsel when counsel failed to object to Womack's statement to Officer Kleiber on hearsay grounds.

The law governing ineffective assistance of counsel claims is clearly established for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d). <u>Canales v. Roe</u>, 151 F.3d 1226, 1229 (9th Cir. 1998.)  In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the court must consider two factors. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984); <u>Lowry v. Lewis</u>, 21 F.3d 344, 346 (9th Cir. 1994). First, the petitioner must show that

counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687.  The petitioner must show that counsel's representation fell below an objective standard of reasonableness, and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances. Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995).  Judicial scrutiny of counsel's performance is highly deferential.  A court indulges a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  Strickland, 466 U.S. at 687; Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir.1994).

Second, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result ... would have been different." Strickland, 466 U.S. at 694. Petitioner must show that counsel's errors were so egregious as to deprive defendant of a fair trial, one whose result is reliable. Id. at 688.  The court must evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's ineffectiveness. Id.; Quintero-Barraza, 78 F.3d at 1345; United States v. Palomba, 31 F.3d 1356, 1461 (9th Cir. 1994).

A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies.  Strickland, 466 U.S. at 697.  Since the defendant must affirmatively prove prejudice, any deficiency that does not result in prejudice must necessarily fail. However, there are certain instances which are legally presumed to result in prejudice, e.g., where there has been an actual or constructive denial of the assistance of counsel or where the State has interfered with counsel's assistance.  Strickland, 466 U.S. at 692; United States v. Cronic, 466 U.S. 648, 659, and n. 25 (1984).  Ineffective assistance of counsel claims are analyzed under the "unreasonable application" prong of Williams v. Taylor, 529 U.S. 362 (2000).  Weighall v. Middle, 215 F.3d 1058, 1062 (2000).

The instant claim was first presented on direct appeal to the Fifth DCA. On August 5, 2004, the Fifth DCA denied the claim in a reasoned opinion. See Lodged Doc. No. 2. Petitioner then presented the claim to the California Supreme Court. The petition was summarily denied on October 13, 2004. See Lodged Doc. No. 4. The California Supreme Court, by its "silent order"

denying review of the Fifth DCA's decision, is presumed to have denied the claims presented for the same reasons stated in the opinion of the Fifth DCA. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

In rejecting this claim, the Fifth DCA determined that regardless of any error on defense counsel's part, Petitioner was not prejudiced. The Fifth DCA analyzed the claim as follows:

> We need not determine whether defense counsel provided deficient representation by his failure to object to Womack's statement to Officer Kleiber because his failure to do so was harmless.
>
> Evidence Code section 356 provides:
>
>> Where part of an act, declaration, conversation, or writing is given in evidence by one party, the whole on the same subject may be inquired into by an adverse party; when a letter is read, the answer may be given; and when a detached act, declaration, conversation, or writing is given in evidence, any other act, declaration, conversation, or writing which is necessary to make it understood may also be given in evidence.
>
> Here defense counsel elicited from Kleiber that Womack told him that he and [Petitioner] were leaving a convenience store when the truck's alarm went off and that Womack's and [Petitioner]'s accounts varied with respect to who left the convenience store first. Therefore, Evidence Code section 356 entitled the prosecutor to admit the remainder of Kleiber's conversation with Womack including [Petitioner]'s alleged admission to Womack that "he [Petitioner] was trying to steal something."
>
> Moreover, any error in admitting this evidence was harmless. During closing arguments defense counsel argued that [Petitioner] and Womack went to a convenience store near where Gates' truck was parked, that Womack left the convenience store before [Petitioner], that Womack broke into the truck while [Petitioner] caught up to him, and that both men ran when Gates and Kaiser came out of Kaiser's house. However, the defense theory was contradicted by [Petitioner]'s statement to Officer Kleiber that he stopped by Gates' truck to urinate and set off the truck's alarm by leaning on it. It was also undermined by the failure of the defense to explain why [Petitioner] and Womack went to the convenience store so early in the morning and by [Petitioner]'s possession of a flashlight, which he could use to burglarize vehicles. Additionally, the jury could reasonably find that [Petitioner] lied to Officer Kleiber and that this reflected a consciousness of guilt. (CALJIC No. 2.03.) It could also find that [Petitioner] exhibited a consciousness of guilt when he ran away after the truck's alarm sounded. (CALJIC No. 2.52.) In view of these circumstances we find that it is unlikely [Petitioner] would have received a more favorable result even if defense counsel had been successful in preventing Womack's statement to Officer Kleiber from being introduced into evidence.
>
> We also reject [Petitioner]'s contention that introduction of Womack's statement prevented him from having the jury instructed on auto tampering. According to [Petitioner], Womack's statement was the only evidence that [Petitioner] had the requisite intent to commit a theft (see CALJIC No. 14.58) when he broke into Gates' truck. Thus, according to [Petitioner], if Womack's statement had not been introduced into evidence the record would not have contained any evidence on one of the elements of auto burglary, which would have entitled him to an instruction on the lesser-included offense of auto tampering. [Petitioner] is wrong.

> "'[T]he existence of 'any evidence, no matter how weak' will not justify instructions on a lesser-included offense, but such instructions are required whenever evidence that the defendant is guilty only of the lesser offense is 'substantial enough to merit consideration' by the jury. [Citations.] 'Substantial evidence' in this context is '"evidence from which a jury composed of reasonable [persons] could . . . conlude[]"' that the less offense, but not the greater, was committed. [Citations.]' [Citation.]" (*People v. Hughes* (2002) 27 Cal.4th 287, 366-367.)
>
> Burglary requires an intent to commit a theft (or any felony) at the time entry is made. (See, e.g., CALJIC No. 14.58.)
>
> "[T]he intent required for robbery and burglary is seldom established with direct evidence but instead is usually inferred from all the facts and circumstances surrounding the crime.'" (*People v. Lewis* (2001) 25 Cal.4th 610, 643.)
>
> The jury could reasonably infer that [Petitioner] broke into Gates' truck with the requisite intent from: 1) his possession of a flashlight which he could use to examine vehicles for property to steal; 2) his actions in breaking into a locked truck in the early morning when the owner was likely to be asleep; 3) his selection of a vehicle that was parked outside the most direct route from the convenience store to his father's house and which had property in the cab that could readily be stolen; and 4) from the consciousness of guilt he exhibited when he lied to Officer Kleiber and when he fled from the scene. Thus, the record contains other evidence besides Womack's statement to Officer Kleiber that supports a finding that [Petitioner] had the intent to steal when he broke into Gates' truck. Further, since nothing about the evidence tended to show that [Petitioner] intended only to tamper with Gates' truck, [Petitioner] would not have been entitled to an instruction on auto tampering, even if Womack's statement to Kleiber had been excluded. Accordingly, we reject [Petitioner's] ineffective assistance of counsel claim because he was not prejudiced by the introduction of the statement.

See Lodged Doc. No. 2 at 5-7.

The state court rejection of this claim was not unreasonable. First, counsel did not err in failing to object. As pointed out by the appellate court, the remainder of Kleiber's conversation with Womack was admissible under California Evid. Code § 356. Therefore, the claim must fail because a failure to make a meritless objection does not constitute ineffective assistance of counsel. See James v. Borg, 24 F.3d 20, 27 (9th Cir. 1994), *cert. denied*, 513 U.S. 935, 115 S.Ct. 333 (1994) (holding that an attorney's failure to make a futile motion is not ineffective assistance of counsel); Shah v. United States, 878 F.2d 1156, 1162 (9th Cir. 1989) (Counsel's failure to raise meritless legal argument does not constitute ineffective assistance of counsel). Even if the evidence was not admissible, Petitioner must overcome the presumption that counsel's lack of objection was a sound trial tactic, which he has not. Morris v. California, 966 F.2d 448, 456 (9th Cir.), *cert. denied*, 506 U.S. 831, 113 S.Ct. 96, 121 L.Ed.2d 57 (1992). Respondent correctly points out that defense counsel would have drawn further attention to the statement by the jury had he objected, and could have lead

the jury to believe he was attempting to hide something from them. Thus, Petitioner has not demonstrated counsel's decision was not a sound trial tactic.

Moreover, as determined by the state court, Petitioner suffered no prejudice. Although Womack's statement to Officer Kleiber incriminated Petitioner, two other statements from Womack were introduced in which Womack incriminated himself. In one statement, the victim testified that Womack stated he had broken into the truck. See Lodged Doc. No. 7 at 36. In the other statement, Womack admitted to Petitioner's father that he was the one responsible for opening the door of the pickup truck. Id. at 68. Womack's statement to Officer Kleiber, in which he denies any wrongdoing and incriminates Petitioner instead, was arguably far less credible than his admissions, as Petitioner's counsel submitted to the jury. Id. at 106. Therefore, there is no reasonable probability that, but for counsel's alleged errors, the result would have been different. Strickland, 466 U.S. at 694.

Accordingly, the state court adjudication of the claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. See 28 U.S.C. § 2254(d). The claim must be rejected.

**ORDER**

Accordingly, IT IS HEREBY ORDERED:

1) The petition for writ of habeas corpus is DENIED WITH PREJUDICE; and

2) The Clerk of Court is DIRECTED to enter judgment for Respondent.

IT IS SO ORDERED.

Dated:   May 7, 2008                    /s/ Gary S. Austin
                                        UNITED STATES MAGISTRATE JUDGE